TRIESCHMANN v. BLYTHEVILLE STEAM LAUNDRY.

Opinion delivered April 11, 1921.

1. LANDLORD AND TENANT—OPTION OF PURCHASE.—A provision in a lease that the lessee should have an option during the life of the lease to purchase, and that if the lessor desired to sell he would give the lessee the preferential right to buy at a price named, was an option to purchase, and not an executory contract to convey

2.  SPECIFIC PERFORMANCE—OPTION CONTRACT.—Where a lessee of land having a legal right to convert an option to buy into an executory contract of sale suffers the lessor to sell the property to another, the remedy of the lessee is not specific performance, but an action at law for breach of the contract.

Appeal from Mississippi Chancery Court, Chickasawba District; *Archer Wheatley,* Chancellor; reversed.

*M. P. Huddleston, R. E. Fuhr* and *J. M. Futrell,* for appellant.

1.  Complainant must have the equitable title before he can call for specific performance.

2.  Possession imputes knowledge to all persons of the possessor's title.

3.  The option here was no more than a standing offer to sell, and, unaccepted, created no right, title or claim to the lands in the laundry company.

4.  If the offer had been accepted by the laundry company prior to the sale to Trieschmann, it would have acquired the equitable title which would have been protected against all persons having notice.

5.  An agreement by one party can not be enforced against a third party except when such third party had made an agreement to that effect.

That Trieschmann had no actual knowledge of the option purchase is fully sustained by the testimony. He had neither actual nor constructive notice.

The laundry company did not exercise its option prior to the sale, and it was error to decree specific performance. 1 Pom., Eq. Jur., §§ 105, 366-7-8.

The finding of the chancellor is against the preponderance of the testimony. The case should be reversed on the law and the facts.

*Little, Buck & Lasley,* for appellee.

Appellant purchased with full notice of appellee's rights and is bound. 39 Cyc. 1756; 6 L. R. A. 205; 31 Cyc. 1592-5; 2 Pom., Eq., §§ 666, 675; 57 U. S. (Law. Ed.) 1310. See, also, 10 Cyc. 1064, 1963; 49 Neb. 618; 61 S. W. 889.

As to "reasonable notice," see, also, 52 Am. Rep. 822. Due notice was given, as the evidence shows. The burden was on appellant and he has failed to meet it.

SMITH, J.   The Blytheville Laundry Company filed its complaint against M. N. Nunn and J. W. Trieschmann, praying for the specific performance of a contract executed by Nunn, as lessor, to the Blytheville Laundry Company, a corporation, as lessee, dated January 25, 1917. The defendant, Nunn, filed an answer, denying all the material allegations of the complaint. Trieschmann filed a separate answer, denying the material allegations of the complaint, and alleging that his codefendant, Nunn, desired to sell the premises described in the lease contract, the same being the building used by the laundry company in the operation of its business, and in compliance therewith notified the plaintiff of his desire to sell and gave the plaintiff the preferential right to purchase, but plaintiff refused to exercise its option and declined to purchase.

The lease contained the following provisions: "It is further understood and agreed by and between the parties hereto that the lessee shall have the option, at any time during the life of this contract, but not during the extension thereof, unless mutually agreed to by the parties hereto in the renewal contract, to purchase said premises for the sum of $3,500, and the lessor agrees, upon the exercising of said option by the lessee, or upon notice from the lessee that it desires to purcahse the same for the sum of $3,500, to execute a good and sufficient warranty deed therefor, conveying the said property to the lessee, or to any one whom it may designate; and it is further understood and agreed by and between the parties hereto that, in the event the lessor desires to sell and dispose of said building, he shall give the lessee the preferential right to purchase the same at and for the sum of $3,500, and shall notify it and give it the first opportunity to acquire said premises."

The court found that, at the time Trieschmann purchased the property from Nunn, the laundry company was in the actual possession of the property, and that Trieschmann was, therefore, affected with notice of the right of the laundry company to purchase the property at any time prior to January 25, 1922. Trieschmann had no notice except that resulting from the actual possession of the premises by the laundry company. The court decreed specific performance upon the payment to Trieschmann of the sum of $3,500, and this appeal is from that decree.

It appears that one Mott, a banker, was the secretary and treasurer of the laundry company, and had acted for it in the negotiations leading up to the execution of the lease; and it was to him that Nunn gave notice of his intention to sell. Mott testified that he accepted the offer, but before a reasonable opportunity was afforded him to consummate the purchase a sale was made to Trieschmann.

Mott testified, however, that he treated the offer as a personal one, and that his acceptance was for his personal benefit; and, because of Mott's attitude toward Nunn's offer to sell, the laundry company insists that it was never given the option to buy. Nunn denied that the offer was accepted by Mott, and stated that he sold to Trieschmann, after Mott, acting for the laundry company, had refused to exercise its option.

But a case for specific performance is not made, even though we accept Mott's statement that he offered to buy. His offer was for himself, and not for the laundry company. The writing set out above is not an executory contract to convey land. There was here only an option to purchase. It is true the contract gave an option to buy, which continued during the life of the lease. But, so far as that feature of the contract is concerned the contract was unilateral. There was no obligation on the part of the laundry company to buy. It could buy or not, as it pleased. The failure of Nunn at any time during the life of the lease to afford the laundry company the

opportunity to exercise its option would have constituted a breach of the contract. But the laundry company could acquire an equitable interest in the land only by exercising its option. Under the contract it had the right at any time during the lease to acquire the equitable title by offering to buy; but it did not acquire this equitable title until it exercised its option.

At section 501 of James on Option Contracts the following statement of the law appears:

"On this subject one line of decisions (the weight of authority) holds that an option contract to purchase does not vest any estate, legal or equitable, in the optionee prior to his election to purchase. This, it is said, results from the nature of the option contract in that thereby the optionor does not sell the property, nor does he thereby agree to do so, but sells to the other party the right merely of an election to buy, and therefore the rule that a vendor under an agreement of sale holds the title in trust for the vendee, and that the vendee holds the purchase money in trust for vendor, does not apply to option contracts.

"There is another line of decisions which seems to hold to the contrary, but it occurs to us the well considered of these decisions hold merely that, when the option is supported by a consideration, the optionee acquires a right, by timely election, to enforce a conveyance of the property as against a purchaser or encumbrancer with notice.

"However, there might be a case where a transaction, taking on the form of the option, is such as to vest in the optionee an equitable right or estate in the property." See, also, *Swift* v. *Erwin*, 104 Ark. 465.

The laundry company had the legal right at any time during the life of the lease to convert an option to buy into an executory contract of sale, in which event a right to a decree for a specific performance would have arisen. But the laundry company suffered a sale of the property to be made before it exercised its

option to buy, and while it had only an option to buy, its remedy, therefore, consisted in an action at law for the breach of the contract. The distinction in the rights of the laundry company before and after exercising its option to buy is shown at sections 367 and 368 of Pomcroy's Equity Jurisprudence in the discussion of the effect of an executory contract at law and in equity.

As the laundry company did not exercise its option prior to the sale, it acquired no equitable title to the land, and the court should not, therefore, have awarded a decree for specific performance. The decree is, therefore, reversed and the cause remanded with directions to dismiss the complaint for want of equity.