FIRST NATIONAL BANK in
Little Rock et al *v.* NORTH
LITTLE ROCK FUNERAL HOME, Inc.

75-46                                    523 S.W. 2d 918

Opinion delivered June 9, 1975

*Homer Tanner,* for appellants.

*Allan W. Horne,* for appellee.

GEORGE ROSE SMITH, Justice. This dispute arises from a written lease which contained two different options entitling the lessee to purchase the leased premises from the lessors. The lessee (the appellee) brought suit for specific performance, asserting its right to exercise the first option in the lease, under which the purchase price would be $75,000. The lessors contended that the lessee could exercise only the second option, under which the purchase price would be $125,-000. This appeal is from a decree upholding the tenant's contention.

The facts are not in controversy. In 1954 Dr. and Mrs. Shelby Atkinson owned the property in question, consisting of three lots in downtown North Little Rock. The land, with its improvements, was then worth some $35,000. The parties executed a ten-year lease, expiring September 10, 1964, by which the owners leased the property to the appellee, a corporation, which agreed in the contract to remodel and im-

prove the property and to use it as a funeral home. At the end of the initial term the lessee exercised an option by which the lease was extended for ten more years, expiring September 10, 1974.

Paragraph 13 of the lease contains the two options to purchase. That paragraph first grants to the lessee an option to purchase the property for $75,000. The option is not to be effective until twenty years from the commencement of the lease "and may be exercised by the Lessee giving notice of its intention to purchase, in writing, at least ninety (90) days prior to the expiration of this lease agreement." Paragraph 13 then provides that in the event the lessors desire to sell the property at any time during the existence of the lease or any extension thereof, the lessee shall be given preference and have the option to purchase the property at a price equal to the highest bona fide offer obtained by the lessors.

Dr. Atkinson died in 1954. The appellants, his widow and a bank, are the trustees under his will. In the summer of 1973, when the lease had more than a year to run, the tenant decided to spend some $33,000 upon an addition to its funeral home. The lease required that such an addition be approved by the lessors. On July 19, 1973, the tenant wrote to the bank, asking for that approval and going on to say: "I would also like for you to review our lease and tell me if we may advise the estate of Dr. Atkinson at this time that we intend to purchase the property, or must we wait until 90 days before the expiration-date of the lease?" The bank approved the addition. Its letter added that the bank was reviewing the lease and would advise the lessee about the option to purchase, but no such advice was ever given.

In January of 1974 the bank listed the property for sale with a real estate agency, but the lessee was not informed of that action. On February 18 the lessee sent the bank positive written notice that the lessee was exercising its option to buy the property for $75,000. On March 4 the bank wrote to the lessee, acknowledging "that you have exercised your option to purchase said property." The bank added, however, that it had elected to sell the property under the second option, that it had listed the property with a realtor, and that when a

bona fide offer is obtained "you shall be notified and given an opportunity to purchase the property at that price."

On March 21 the lessee filed this suit for specific performance of its contract to buy the property for $75,000. On September 6, four days before the expiration of the lease, the lessors filed a pleading stating that they had obtained an offer of $125,000 for the property and asking, in substance, that the lessee either meet that offer or relinquish its claim. The chancellor, as we have said, sustained the appellee's right to purchase the property for $75,000.

The chancellor was right. In both logic and justice the appellee's position is demonstrably superior to that of the appellants. More than a year before the expiration of the lease the appellee announced its intention to buy the property and, with the lessors' approval, spent $33,000 in improving it. In due time the appellee gave the required written notice of its decision to purchase the property, thereby converting its option into a binding executory contract. See *Trieschmann* v. *Blytheville Steam Laundry*, 148 Ark. 237, 230 S.W. 3 (1921); *Butler* v. *Richardson*, 74 R. I. 344, 60 A. 2d 718 (1948); *Sinclair Ref. Co.* v. *Allbritton*, 147 Tex. 468, 218 S.W. 2d 185, 8 A.L.R. 2d 595 (1949). Thus the appellee unequivocally bound itself to buy the property at the agreed price of $75,000.

By contrast, the lessors committed themselves to nothing. Their action in listing the property for sale was purely unilateral and subject to cancellation at any time. In the circumstances the lessee's irrevocable exercise of the first option to purchase necessarily had the effect of terminating any right that the lessors might otherwise have had to assert a cause of action under the alternative clause in Paragraph 13 of the lease.

Affirmed.

FOGLEMAN, J., not participating.